Case No. 20-1156, Public Citizen, Inc. v. Federal Energy Regulatory Commission Mr. Nelson for Petitioner, Ms. Perry for Respondent, and Mr. Bress for Intervenors Good morning, Your Honor, and may it please the Court I'm Scott Nelson, representing the Petitioner, Public Citizen I've asked to reserve three minutes for rebuttal In this case, the Federal Energy Regulatory Commission rejected complaints that the results of the Mid-Continent Independent System Operators 2015-16 planning resource auction for Mid-Continent Zone 4 were unjust and unreasonable because they reflected an exercise of market power by Dynagy, a pivotal supplier for the zone Dynagy's capacity was necessary to meet the zone's local clearing requirement So the auction clearing price could be no lower than its bid of the last increment of capacity needed And that is what happened Dynagy's bid of $150 per megawatt day for the last block of its capacity that was needed to satisfy the local clearing requirement established the auction clearing price and raised capacity prices by over 800% over the previous year The Commission's rejection of the complaint that that rate was unjust and unreasonable in violation of the commands of Sections 205 and 206 of the Federal Power Act rested exclusively on its conclusion that the auction was held in compliance with the existing terms of Mid-Continent's tariff In this court, both FERC and Intervenor Vistra, Dynagy's successor in interest concede that that is not a sufficient answer under Section 206 The prior approval by the Commission of an auction procedure does not render the results of an auction just and reasonable or preclude a challenge under Section 206 Here, that concession alone requires remand Under the Chenery Principle, FERC's and Vistra's attempts to devise alternative rationales for FERC's decision can't save the Commission's ruling given that its stated basis is indefensible by their own admission Council's arguments also can't save the Commission's rejection of public citizens' complaint of manipulation by Dynagy because that decision lacks any rationale at all It rested on a completely unexplained finding that Dynagy's conduct did not amount to manipulation under the Commission's rules Again, FERC's response to your, as I understand it, to your market manipulation argument is that market manipulation issues are handled under a 306 and that under 306 it did an investigation and concluded there was no evidence of market manipulation and there's no private right of action under that That's your response to your market manipulation and that's not post hoc, they make that argument in the order denying rehearing So what's your response to that? Well, I would say that the way FERC argues that in its brief is post hoc because what the Commission said in its rehearing order was that we were not, in fact, improperly invoking a private right of action and it acknowledged that market manipulation may be raised in a complaint FERC did in its order refer to Sorry, Mr. Nelson, I didn't understand what you just said FERC says both in the order denying rehearing and in its brief here and correct me if you think I'm wrong, but if I understand the Commission's position it is that market manipulation complaints under 222 are different from 205 proceedings and that you raise a market manipulation claim under 306 and that it treated it that way even though you in your petition raised it under 206 the FERC said those are properly raised under 306 and it conducted its investigation and then closed it and it said market manipulation proceedings are different from 205 and 206 they're just totally different animals Isn't that their position in both places? Your Honor, I agree that they did say in both places that manipulation is different and it's procedurally not heard under section 206 Do you agree with that, by the way? Do you accept that? I would say that Commissioner Glick's position that market manipulation can be relevant in a 206 complaint is actually the correct one I'm sorry, you said it can be relevant? Yes, because a rate that is the result of market manipulation in the form of an exercise of market power is not just and reasonable under the Commission's own concept of what constitutes a just and reasonable rate But further, what I would say is as to the Commission's rationale in its orders it acknowledged that in raising the issue of manipulation in a complaint we weren't guilty of trying to improperly invoke a private right of action because the Commission acknowledges that an administrative complaint is not a private right of action within the meaning of section 222's prohibition on a private right of action And having allowed a party to raise the matter by complaint regardless of whether it's a complaint under 306 or 206 the Commission, once it entertains the complaint and purports to terminate it on the basis not of an exercise of prosecutorial discretion but an actual finding that under its rules no manipulation occurred You know, once it has ruled on the merits it's incumbent on it to provide an explanation rather than a mere ipse dixit, which is what it did here I mean, it said we investigated, fine and we found no manipulation It didn't say why they found no manipulation what it was about the conduct that led it to the conclusion that it was not manipulative why the claims of manipulation that had been made by the parties were improper Okay, but, Mr. Newell, if this had been just a straight 306 proceeding there wouldn't have been anything wrong with that, correct? No, I'm not sure I would agree with that, Your Honor If the Commission had said in response to such a complaint we've investigated and in the exercise of our discretion we don't feel that it's appropriate to devote any further resources to this matter I think that would have been the end of it had it not been linked to a challenge to the rates Okay, that's what I meant So your point is that because this is connected to a 206 complaint it's different, that's your argument, right? That's part of it and it's also that instead of exercising discretion they made an express finding that the complaint was unfounded and that there was no manipulation and that is not an exercise of discretion but in the words of this court in the Southern Union Gas case that's a summary adjudication of the merits and that cannot be done based merely on an unexplained and unreasoned assertion Can I ask in this regard, one thing that's confusing to me is market manipulation is defined as what it is and it's a pretty serious form of behavior but for 206, if you show market power affected the auction that's enough Is it your view that market manipulation by definition may also include market power but to demonstrate market power you don't have to go all the way to showing market manipulation, do you? That's correct and again the commission acknowledged that in its rehearing order and that's why as you probably noted my opening argument in the brief is about sections 205 and 206 That's what I'm trying to understand when you say what the fight is about the market manipulation is that you think what you call conclusion what they say is exercise of discretion that whatever information they accumulated through that process should be part of their 206 decision as well Is that your point? I think they made a substantive decision and that's something that we just get to challenge directly under I think it's the former, your honor that again we don't have to prevail on that to establish that the rates here were the result of market power based on the fact that the way the auction was set up allowed Dynegy to exercise market power but the finding, if there's a determination as to whether it was a deliberately manipulated bidding strategy that would certainly I think also inform the determination I should think if they found that there was market manipulation they would be hard pressed to not find market power in 206 but it doesn't work the other way There's no market manipulation I'm not sure what that has to do with your 206 claim other than you can still prevail by showing market power I'm not understanding in your response to Judge Tatel what the bridge is that you're trying to argue here between their conclusory statement as to why they weren't going to investigate further they find a violation and the 206 process Well I think it's the way you put it at the outset that although it isn't necessary to find manipulation in order to find the rates unjust and unreasonable if there were a finding of manipulation it would raise to that I get that if there were but if there's not we're in a case where there was not a finding so what bearing on your 206 claim There's not a finding but the finding that there was no market manipulation is not sustainable because it's unreason I mean they did make that in your view they made that determination Yes they made the determination So now what happened and is your argument about that unsubstantiated is that just a direct challenge under market manipulation provision or is that something you're now importing into your 206 analysis I'm just not even sure where this analysis that you want us to undertake is supposed to happen It is that if the agency is forced to actually make a reasoned determination on that matter It would end up As opposed to our 206 analysis Yes Although again as you point out it's not essential because the 206 analysis on its face is entirely deficient and concededly so So I'm sorry to interrupt Just on the 222 you do I thought argue that once the commission articulates a finding on the merits that the sufficiency of that is reviewable for the adequacy of the articulation or not I mean in this court you're not claiming anything directly under 222 or are you I think it's the latter It's before the court because the two proceedings are related and linked If it were just a matter of a 222 complaint without any relationship to the lawfulness of a rate I don't think we'd be here on it So and then how about 205 and 206 I mean I understand the action in your case to be under 206 because as intervener and amicus have argued the rate here for purposes of 205 and pre-implementation review is the tariff not the auction result not the price resulting from the auction So if we were to agree with that you can tell me why you think we shouldn't but if we were to agree with that what we're really looking at is public citizens complained under 206 that the resulting well you can tell me what the target of it is but I take it to be that there was an exercise of market power there was a finding by FERC that the tariff going forward was not just unreasonable and that there was a spike in rates and that those things together demonstrated that the tariff was not adequately fulfilling its role Is that your... Yeah I think that captures the 206 aspect of it pretty well The piece that I would add is that the commission's reasoning in 2015 in finding the tariff inadequate going forward as to the local clearing requirement was based entirely on factors that were equally applicable at the time of the 2015-16 auction and absent that aspect of the tariff that required several thousand additional megawatt days to be acquired locally Dynegy would not have been in a position to be the pivotal supplier and second as to the conduct threshold that the commission uses to determine whether a rate resulting from the auction requires mitigation the bulk of the commission's reasoning in finding the tariff unreasonable going forward was also equally applicable in 2015-16 because it was based on evidence that during the period 2013-2015 there really were constraints on transmission into PJM that rendered the opportunity cost of selling into PJM an improper measure of whether a rate was reasonable So those things together are the 206 analysis What I would say on 205 is where we differ I think principally with the commission and Vistra given the existing state of the law is that although courts have accepted this idea the fiction really that tariff is the filed rate even in so doing and this is most evident in the 9th Circuit's decision in Harris the courts have still insisted that the commission's under 205 is not complete unless and until it reviews the resulting rates under 205 As part of the quarterly reporting not as a review before those prices can be effective I think that's right the way the 9th Circuit and this court have looked at it So therefore the difference really comes down to burden of proof as opposed to timing with the burden of proof being on the proponent under 205 and on the complainant under 206 But again here, you know, that really doesn't make any difference because the commission's rationale for rejecting the complaint under 206 is just wrong as a matter of law because it rests exclusively on the proposition that the rates were just and reasonable because they were the result of an auction carried out in accordance with the terms of the tariff without regard to whether the terms of the tariff remain just and reasonable at that time or whether the resulting rates reflected an exercise of market power that the tariff's terms were inadequate to prevent I take them also to be saying that could be wrong as a matter of law where you've met your burden where there is reason to think that the tariff didn't do its job And so I guess my question for you is to the extent that even to put before us what might otherwise be the harmless error of simply citing to the price being a result of the tariff what have you done to put that in issue? In other words, what's yours or ticking off the items how you met your burden of proof under 206? Well, first I would say that the commission itself did not say anyone failed to carry their burden under 206. If you look at the relevant portions, the ordering portions of both the initial order and the rehearing order the words burden of proof don't appear nor did the commission find as its briefs and justified that it was not the result of an exercise of market power that it was reasonable in relation to rates elsewhere or that it wasn't because Dynegy was a pivotal supplier. But I think what we and the other complainants collectively established to carry our burden was that Dynegy was a pivotal supplier in other words, it had market power that the rate here but for its market power would not have been anywhere near $150 per megawatt day and that there were features of the tariff that resulted in Dynegy's being able to exercise that, that the commission itself held that those features were unjust and unreasonable for reasons equally applicable in the 2015-16 option. And that is the local clearing requirement and the conduct threshold initial reference level. Unless there are questions. We will hear from the commission now. Thank you. Thank you. Good morning, Your Honors. It is not the case as Mr. Nelson just stated that the commission did not make a finding that they failed to meet their burden under 206 to show that there was an exercise of market power in the option and that resulted in unjust and unreasonable rates. I would direct your attention to paragraph 14 of the rehearing order where the commission specifically said public citizen has not met its burden as a complainant to demonstrate that activity meeting that definition of market manipulation occurred and resulted in rates that are unjust and unreasonable. And similarly in the same thing that seems to turn on market manipulation as opposed to market power. Does the commission understand market manipulation and use of market power under 206 to be different things? An exercise of market power could include market manipulation. I understand that. It is hard to imagine how you don't have market power. I am asking the other one. All they found here was burden of proof on market manipulation and for 206 purposes I thought we were talking about the burden of proof that market power infected the option in a way that caused the rates not to be just reasonable. The Venn diagrams will overlap in part but there are forms of market power that fall short of the very high standard of showing market manipulation. Is that correct? In paragraph 15 of the rehearing order the commission recognized there was a distinct question of whether an exercise of market power in the option resulted in unjust and unreasonable rates. Where did the commission address the burden of proof under 206 as to market power? The commission noted that the arguments that public citizens made with respect to showing that there had been unjust and unreasonable   argument that the argument that the argument that the public can also be and idea . The commission the commission answered both of those in the complaint order in paragraph 84. The commission the commission , in the initial decision . The commission found specifically they denied the complaint allegations , finding specifically that the auction clearing price is not shown to be unjust and unreasonable because it is higher than expected. And that is where they cited. I'm sorry. Go ahead and finish your sentence. Because the argument that was made , if you look in particular in their hearing request, the argument that was made was the 800% argument. This rate was so high. It must be unjust and unreasonable. And that was the argument that the commission was making. It is not just that it was higher than they liked. It was astronomically higher than it had been in the past and than it was in any of the other zones. This was an extraordinary change. That is higher than what I think it should be. So, this was a very sharp and acute spike in prices isolated to zone 4 combined with the evidence put in by public citizens in which the commission relied showing that there were problems in the market. And that it was assuming this ability to export power to PJM that in fact was the commission found for this very year in question was wrong. I don't know how just saying just because the price is higher isn't enough of a basis. I don't know how you get from that to saying that the commission didn't meet their burden of proof and they didn't meet their burden of proof with the astronomical nature of the change in the price. It could very well be legitimate reasons for it. I don't know. But an astronomical high rate that is a sharp departure from past and from what is going on everywhere around this zone and the problems with the tariff that the commission agreed required change made the tariff incapable of providing just and reasonable rates when those exact same problems existed in 2015-16 auctions. Please tell me where they addressed that accumulation of evidence and concluded that they hadn't met their burden of proof. Several responses to that, Your Honor. In the first place, the commission had a separate discussion of the tariff and its perspective changes to the tariff in the 2015 order. And I'll get to that in a moment if I could. I would like to start first, though, with your point about the simply being higher it being so much higher than expected. And that is the significance of the citation the commission makes to Deinergy's answer to the complaints at 33 to 35, which is Wait a minute, Ms. Perry. That's in the discussion of the parties' respective positions. No, Your Honor, that's the footnote. It's the footnote to the statement that the price is not unjust and unreasonable because it is higher than expected. It's footnote 243, which follows that sentence. What page of the JA are you on here? I'm sorry, it's JA 105. It's paragraph 84. In footnote 243, the footnote to that sentence refers to Deinergy's answer to the complaint at 33 to 35, which, as you point out, the commission had in the preceding paragraph described at some length. And what that shows, what that evidence was put in to show was that the prices that were charged, the $150 price that was charged was consistent with the going forward marginal cost of the marginal unit that was bid into that option. And the significance of that is that what happened in the 2015 option is that they ended up going further into the resources that were available, going to more expensive units to obtain the amount of  And as of 2014, Deinergy had a similar bid structure. I'm looking for commission findings. The commission finding is pointing to this evidence. There was evidence in the record that the option bids that were placed by Deinergy were consistent with their going forward cost. And as the commission has pointed out from this evidence, the consistent with going forward marginal cost is a competitive bid. And the tariff has always, before the changes and after the changes ‑‑ To be fair, it strikes me as a bit indirect. If somehow you're saying that with this sentence which just says unreasonable because it's higher than expected and then a footnote citing a new thing, they now have adopted everything as their own decision. Is that your position? I'm not suggesting that they adopted this. What they were pointing out is there is evidence in the record. This is very important to me. They weren't adopting, by citing to those pages, they weren't adopting that as their own decision. They were noting that there was evidence in the record that these were just and reasonable rates. And there was no contrary evidence. Public citizen never put in any contrary evidence. Okay. Again, they aren't saying, the sentence says not unjust and reasonable because it is higher than expected. Which is not necessarily the same thing as the very sharp and acute and sudden divergence we had here. And then you said, well, they dropped a footnote to Miso and Dainaji's answers. And the answers are evidence. But they didn't necessarily adopt that evidence. They just pointed to it and they didn't have anything to cite from public citizen. Is that your answer? That's exactly the point, Your Honor. Public citizen had the burden of proof. When I gave you the list, it wasn't just higher than expected. We'll give that your reading. But there was also the very same evidence that caused the commission to say this tariff isn't going to work anymore with these presumptions about exporting to the PJM market. It's not going to work. It's setting the wrong numbers. And the commission found that exact same problem was already existing at the time of the 2015-16 auction. And yet it said we don't need to look at the 2015-16 auction. So I don't understand how just this here is saying they didn't meet their burden of proof when you haven't addressed this additional evidence. They had evidence that was so powerful that the commission found so credible, it ordered the change in the tariff going forward. Isn't that part of the evidence? Your Honor, the commission addressed the evidence with respect to the tariff in a later part, and I'll talk about that now, in the rehearing order at paragraphs 20-23. And that says joint appendix at 135 and 136. And the commission found that the fact that it made, specifically in paragraph 22, the commission found that the fact that it made prospective changes in December of 2015 does not support the claim that the April 2015 auction reflected the exercise of market power and produced unreasonable results. That ignored that the 2015 decision rested on two prongs. It rested on these changes that were coming to PJM. But it said, I'm at J940 now. Paragraph 86. In addition, based on the record before us, we have found that the amount of NISO capacity that can be sold in PJM is significantly limited due to the availability of transmission services. And they're talking about an existing problem, not a future problem. It's that in addition to these future changes, the record before us shows that it was much more limited ability to transmit these services to PJM. Right? But that's not mentioned, that second prong of the commission's 2015 decision, unless I've missed it and you can tell me, appears nowhere in this analysis where you say they said they didn't meet their burden of proof. That's where I'm really confused. Well, Your Honor, I think that you have to view this response as being in response to public citizens' rehearing requests. And if you look, they're responding to page 21 of the rehearing request, which is at 1054, Joint Appendix 1054. And if you look at that rehearing request, what it says is the commission didn't determine whether the conditions were just and reasonable in April in the spring of 2015. And this is particularly striking, given the determination in December that the tariff provisions were no longer just and reasonable. In responding to that statement, it says nothing about explain to us why the existing conditions in spring of 2015 were not sufficient for an unjust and reasonable finding. It doesn't raise anything about the existing conditions. It simply says you found in December of 2015 that it was unjust and unreasonable. Why is that not enough? It's pointing to this very two-pronged decision that I just referenced. And I guess I don't understand why if it's good enough for the commission to point to answers in a footnote to tell evidence but not really adopt it, it's not okay for them to point to the commission's very decision that was a two-pronged decision and say you haven't addressed it. But again, we go back to the burden of proof. Exactly what I'm on. It's not going back to you. I am still on the burden of proof. And I'm asking you why when they say look what you said in 2015, which was a two-pronged explanation about existing problems as well as future problems, they brought that in. They brought that in. The commission relied on that evidence. And the commission said it's both future and present. And why didn't they say look at what you said in 2015 about our evidence isn't meeting their burden of proof? The 2015 decision was expressly based on both prongs, as you say. Expressly based on both prongs. There was no finding that and that was in fact most of the argument that the parties had made to the commission was about the existing conditions. And the commission didn't make a finding that the existing conditions were in fact sufficient all by themselves to justify an unjust and reasonable finding. They relied on both. Sorry, I don't mean to cut you off. No, please go ahead. Sort of a procedural version of I think the same issue, which is given FERC's position as you articulated, why did FERC wait until 2019 to respond to public citizens' claim under section 206 that the auction results suggested that the price was unjust and unreasonable? If the prices were just and reasonable because they complied with the tariff and publics are presumptively just and reasonable because they complied with the tariff and public citizens had no evidence to the contrary, then why didn't FERC just say that in the 2015 order? I don't know the reason for the delay, Your Honor. I know the reason they didn't say it in the 2015 order, which they expressly stated in the 2015 order, was it needed to be done promptly in order that the new tariff provisions could be implemented in time for the next auction. And so they declined to resolve all the other issues. But in your view, it's just open and shut that the auction price results from a tariff that had been anti-approved as just and reasonable and the burden is on public citizens under 206. And in your view, nothing that public citizens had said met that burden. So it seems peculiar to me that the public citizen petition was granted only in part and that the commission's, I mean, to me, it legally implies that at that time, the commission thought the public citizen had at least sort of prima facie raised a 206 claim that needed to be looked into. And yet now you're saying really harking back to what was on the table in 2015, that it was deficient all along and just having trouble squaring that. Well, a couple of things, Your Honor. The commission was litigating the 206 complaints of a number of complainants to start off with. And a number of complainants made a number of arguments that public citizens didn't make. We are just now down to public citizen. And public citizen is the only party to start rehearing. So we are now down to only what it is that public citizens are doing. But there were a number of other complaints and a number of parties who put in evidence of all sorts that were also under consideration. Let me add also, is there a circumstance in which the conduct threshold could be met, but the commission nonetheless find an exercise of market power that would show the tariff to be inadequate in shielding consumers? In other words, the fact that the conduct threshold is not exceeded, again, maybe that creates a presumption that the tariff is adequate. But it isn't a conclusive presumption, is it? You could have an exercise of market power and then make it a presumption in the case of a market manipulation that yielded a price below the conduct threshold. Certainly, somebody could file a complaint making that allegation. The point is just the way the tariff works. The tariff would not mitigate that bid. That's what the conduct threshold means. The market monitor would not mitigate that bid. It would be deemed acceptable under the tariff. Until there is another reason to believe that market power was exercised or even worse, that there was market manipulation. If you were in federal court parlance, you wouldn't file a 12B6 on a section 206 claim just saying, sorry, price below conduct threshold, no claim. You wouldn't. In fact, there could be some exercise of market power. It could be evidenced by an above conduct threshold price. Certainly, somebody could file a complaint alleging that it was unjust and unreasonable. It wouldn't be a 12B6 issue. The commission recognizes that that might still be legally viable. Exactly. They would have to come up with evidence indicating why even though it was within what had been deemed to be the competitive level, it was nonetheless an exercise of market power. I was going to change the subject. I'll change the subject. I want to go back to the market manipulation issue and approach it from a slightly different perspective. I understand what the commission said in its order and what you say in your brief about that. What I'm interested in is the commission's view that claims of market manipulation cannot be pursued in a 206 procedure. That's the commission's view. The commission's view, as I understand it, is market manipulation under violating 222 is handled under 306. You did the investigation. The investigation was closed. There's no private right of action. As I read our market manipulation cases, we don't have that many of them, but they're almost all brought by competitors claiming market manipulation by a competitor. This is a 206 proceeding by ratepayers claiming that market manipulation produced an unjust and unreasonable rate. My question to you is what in the statute or case law supports that division that the commission has adopted here? I think the commission clarified on rehearing what its position is on this subject. There are two separate things going on with regard to the allegations of market manipulation. The commission said clearly on the one hand Before you go into that, tell me if my perception of the commission's position is correct. That is, that claims of market manipulation are properly brought under 306, not 206, right? Yes, Your Honor, for violations of section 222, but that does not mean that the commission does not consider allegations of market power, which could include allegations of market manipulation. I'm sorry. Say again what you said. I interrupted you and didn't mean to. That doesn't mean what? I'm sorry. That doesn't mean the commission's investigation of market manipulation allegations under sections as violating section 222 are within the commission's discretion. Correct. But that doesn't mean that the commission does not consider whether there are unjust and unreasonable rates that resulted from exercises of market power, which could include market manipulation. But in this particular case, in this particular case, the commission disposed of the market manipulation claims without any explanation, which would be fine if it was the straightforward 306 case. But the petitioners have brought their market manipulation claims under 206, claiming that even though even though the tariff was complied with, market manipulation may have rendered. Well, here's what Commissioner Glick said this. The fact that NISO and the individual market participants appear to have followed the relevant tariff does not respond to allegations that the resulting rates are unjust and unreasonable as a result of market manipulation. It seems to me what's wrong. That seems to me what the petitioners are arguing here. Why isn't that correct? That's exactly the dichotomy that the commission discussed in paragraphs 12 and 15 of the 222 violations, which is commission discretion. The commission specifically found in paragraph 14, which is the joint appendix 131, that public citizen had not met its burden as a complaint to demonstrate that activity meeting the definition of market manipulation occurred and resulted in rates that are unjust and unreasonable. But I don't understand that, given the allegations they made. I mean, the allegations they made in their 206 proceeding is that capacity was withheld in order to allow a higher bid here. They withheld capacity, that there was history here that there had been an effort to combine the two units that was resisted by the producers. They have a lot of allegations and the commission simply rejected them without it did a full investigation of market manipulation. As it says itself, it interviewed dozens of witnesses, reviewed hundreds of pages of documents, but dismissed the complaint without any reason. That's very different from saying Dinergy's hadn't met its burden. There's absolutely no explanation. I don't think there's any explanation for why Dinergy's hadn't met its burden, possibly in the record, for why public citizen didn't meet its burden is in that, is in the commission's report on manipulation, which isn't public. We don't know what's in there. There's no explanation at all for why it didn't meet its burden. The commission simply asserts it and the reasons presumably are in its secret report on manipulation. No, Your Honor. The point is as public citizens burden of proof, it was their obligation to produce evidence of market manipulation. Where do I find in the commission's orders an explanation for why it didn't meet its burden of proof? Other than a statement that it didn't. Where do I find that explanation? Under 206. Under 206, Ms. Perry. 206. That it didn't meet its burden of proof. I agree with you. The burden is on public citizen in the 206 proceeding. It has to convince, it has a burden of proof of showing. Let me make sure I get this. I'm sorry to go in a different direction, but you agree then that if public citizen could prove, could attempt to prove under 206 that market manipulation produced unjust and unreasonable rates, do you agree with that? Yes, Your Honor. As a matter of fact, Commissioner Glick put that 14 of his dissents at joint appendix 140 recognized that the commission in paragraph 14 was making a section 206 finding. Let's go back to my question. Now that we agree, I didn't understand that that would be your position, but now that you agree that a complainant bringing a 206 complaint by public citizen may argue that market manipulation resulted in unjust and unreasonable rates, we agree on that now. And the commission, I agree the burden of proof is on them, but where do I find an explanation in the commission's orders as to why it was not, why public citizen had not satisfied its burden of proof? The only thing I saw was random statements which are correct, that there's no private right of action. But where is the explanation for why public citizen failed to meet its burden of proof under 206? The explanation, Your Honor, would be going back to the same commission statements we have been talking about. Why don't you just find those for me? Tell me right now which ones answer that question. Which ones precisely answer that question? The closest answer, Your Honor, would be the answer in paragraph 84 of the complaint order, Joint Appendix 105, where the commission found that an auction clearing price is not unjust and unreasonable because it is higher than expected. Because the thing you have to recall here is that... That's not responsive to Commissioner Glick's point or my point, which is that the fact that it complies with the tariff is not inconsistent with the proposition that the rates might have resulted from market manipulation. He's pretty clear about that. He says just because something is legal does not mean that it's not market manipulation. No, Your Honor. This goes more to... This doesn't go to tariff compliance. This goes to it being an unexpectedly high rate. And you have to bear in mind here that what was alleged was economic withholding, and the commission discussed this at paragraph 85, also on JA 105, economic withholding. And what economic withholding means is that you submit a bid that is substantially higher than a competitive level and causes the market clearing price to rise. So the fact that you have to show the burden of proof is show that it was substantially higher than a competitive level. And that is what the commission was suggesting was not shown. Okay. All right. Well, so just my last question is, I'm absolutely sure that when I go back and think about this case and I look to find where the commission explained that public citizen had failed to meet its burden of proof, I look to paragraphs 84 and 85, right? Paragraphs 84 and 85, and there is a discussion of tariff at paragraphs 20 through 23 of the rehearing order. And which ones? Which ones? 21? Paragraph 20 through 23 of the rehearing order, which is the joint appendix 135 and 136. But these are in response to public citizen's arguments, which were the price was too high. Judge, did you have a question? I was just trying to figure out about, I mean, I think one of the things that public citizen points to here is not just that the price was high, because as we know with a vertical curve, you're going to have a lot of price volatility, prices that are from zero to 60 in no time . But that it was just in this zone. So we don't have kind of a Texas system or situation where there is a capacity problem and all the prices are going up and they're sending the market signal that new capacity needs to be built. I don't think anybody understands what happened in this auction as an accurate signal that new capacity needs to be built. And so when ordinarily you'd have the conduct threshold and you'd say, you know, sometimes the prices are going to be up there when you have a lack of capacity. And that's why we have the capacity auction is to protect against that. But here it's anomalous. And isn't that also pertinent to whether there's a reason for the commission here to think that the tariff did not sufficiently protect against exercise of market power in the 2015-16 auction? Your Honor, the price was higher in Zone 4 during this auction because they had to reach further into their resources to more expensive resources in order to provide the capacity they needed. I don't know why that particular fact would... Is that a finding by the commission? It's just the way the auction works. I mean, the commission explains the auction function that it's a question of you're taking you continue taking bids until you get to the marginal unit necessary to satisfy the capacity requirement. And isn't that exactly the... I know that the commission and intervenors and amicus point to the PJM change, but the other aspect of the going forward determination to change the tariff was that, wasn't it? And so that was at play in April of 2015, was it not? Well, the point about the local clearing requirement, Your Honor, is that in the reason why the commission focused on the mitigation provisions of the tariff is that the local clearing requirement is a reliability requirement, and it just defines how much capacity has to come from inside the zone. And the point is, so long as the tariff mitigation measures are functioning, there will be no ability to exercise market power as a result of the local clearing requirement, even if you're a pivotal seller, because the mitigation measures are specifically designed to mitigate any market power of that sort. It's not that they were held to be inadequate, presumably because they weren't effectively mitigating market power under the particular circumstances that obtained, including the local clearing requirement or not. The finding was that they would not be sufficient to do that going forward, given the changes in the PJM capacity market. But not only that. Exactly. But the commission specifically said that the changes in the PJM, and this is paragraph 87 of the 2015 order, which is at J941, the commission specifically found that the changes in PJM will further limit the already existing problems. And so it was the combination of two, it was specifically the combination of the two that made the commission conclude that going forward it was not a reasonable opportunity. So your life would have been a lot easier if the commission had also at some point made a finding that even without the PJM changes, it would not have needed to change the tariff going forward. Your life would be much easier. But it didn't so fine, did it? Yeah. Sorry, I have another question. Go ahead. I just wanted to follow up on what makes the tariff process reliable is not just that an auction is conducted consistent with an existing and FERC-approved tariff, but there's this ex-post process. Right? And that ex-post process involves filing reports. But the points of filing reports is so that the commission can engage in what the ninth circuit described in the California case is active, ongoing review. And we've required a procedure for monitoring those reports. But all FERC relied on in paragraph J134, the rehearing, was the fact that reports were filed. And which has caused me to realize that I don't have any idea how this active, ongoing monitoring process applies. The commission, like I said, relied on the fact that reports were filed. And that, of course, is not the ex-post requirement. The ex-post requirement is that FERC's monitoring and using the reports and maybe anything else that comes to its attention to do so. Commission didn't rely on its own monitoring or any determination that it might have made based on reports that were filed. So can you explain to me, first of all, who looked at those reports? The reports that were filed here. Reports referenced by the commission. And then how and when is the decision made by the commission that, yeah, those reports don't raise our eyes. How did that happen in this case? Maybe you have to explain more generally how it goes. But in this case, because the commission doesn't seem to rely on its own monitoring. Well, generally how it goes is described in the Consumer Council at page 919 where the court discusses how FERC monitors the data that comes in the quarterly reports to ensure that the reported transactions are consistent with a competitive, unmanipulated market. Meaning it's not looking at each individual transaction to see if it's a just and reasonable rate in the sense of you filing a just and reasonable rate application. But it's looking for what is expected of a competitive, unmanipulated market. Maybe I'm not clear enough. So I'm not talking about how courts just describe what FERC's obligation is. So FERC got these reports in. It referenced those in its rehearing order. What did it do with them? The commission initiated an investigation, Your Honor. In the market manipulation based on those reports as opposed to the complaints? The initiation of the investigation, to my knowledge, was never tied to the complaints. It was based on those reports. The commission didn't specify, but it was shortly after the option that the commission initiated the investigation. The commission's review. I'm getting really confused here. So you're saying that the investigation of market manipulation wasn't triggered by the complaints that were filed, but was triggered by the reports that were filed. I wouldn't have thought the first report would have been filed until July for the first quarter after. Maybe it came in, I guess, at the end of April, right after the auction. Is that what did it? Your Honor, if you look at the order of non-public formal investigation, which unfortunately is not apparently in the JA, but it's cited in our brief. I guess I don't have it in front of me. I'm sorry. I mean, it specifies that the auction was commenced shortly after the informal part of the option, not the formal part, but the informal option and formal investigation was initiated shortly after the conclusion of the option. But we don't know what it was based on. You began by saying, I thought maybe I misunderstood it. I thought you said, oh, that investigation was based on the reports, not the complaints. But now you're saying we don't know what caused that. I don't know what specifically caused them to initiate the investigation, but there are the commissions. I don't know.   I don't know that this review of rates is ongoing. It's I'm asking really in particular what happens with these reports? Like, is there an office that reviews them? Does someone do a report to the commission? Quarterly. But because the whole, this is really critical sort of belt and suspenders to making sure we can rely on Tara. That there'd be this post-hoc, not just filing of reports, but active ongoing review. By FERC. And. And if FERC. By real. By its reference and it's right here. Decision was relying on that reporting. And concluding that the tariff was sufficient. I'm trying to understand how, how it came to that. Determination. Okay. Your honor. Paragraph 18, again, is another example of the burden of proof. Because this is exactly my question. Question has its own burden here. I have no obligation. Not a burden of proof. And of course, There's its own obligation to do this reviewing and to come and to make a determination that yes. The tariff is sufficient and that we have proof that the tariff is  And we have proof that the tariff is still working, or we don't see anything here. That raises our eyebrows. Okay. And what, that's my, my question is just about. How that process works. In this case. To describe it more generally, that's fine. That they looked at the report. And. They did exactly what they're required to do at post. And they looked at reports. And I thought your first answer to me was that triggered the investigation. But now we don't know what triggered the investigation. It's a non-public investigation, your honor. I mean, they don't. I don't know why. Okay. Then we don't know what. So if I misunderstood you, I thought you said that was, didn't rely on a complaint at all. It was on the report. What is. Please explain to me. They file these reports. They're massive spreadsheets. Who looks at them? How is this determination made? What, what happened? I, to be honest, your honor. I don't know the answer to that question. I can find that out. We do know from the record that it was closed by the chair. Correct. That's right. It never went to the commission. Correct. I don't know the answer to that question. It was closed by the chairman. Apparently it said given commissioner. He apparently was apprised of what was. It's found in the investigation, but he was not consulted on whether it should be closed or not. He said that had he been consulted, he would. He would have not agreed. That hasn't been challenged, but is that typical? Do we know. I don't know. I'm sorry. More questions. We've kept you up here for a long time, but I, I mean, first set a refund effective date in the 2015 order. And I take it. That's just because that's a requirement. In the statute. It hasn't ordered any refunds. Has it. No, no, no. With respect to this. And, and what. What would be the effect or how would a refund be framed? I mean, it's not a refund. It's a refund. With that effective date. In other words, Did any of the actual capacity sales. Flowing from the 2015, 2016 auction price take place within the refund period. I'm sorry. And I just had one other question, which is about this. You know, throughout the brief, there's. There's a back and forth about a price and whether the auction price is a rate subject to. 205 and the. Amicus I think takes the hardest line that. That the auction price. Just is not a rate, although even it sometimes uses the term rate to refer to an auction. Price. Is it first position that it. Has to review. Whether actual auction price. Capacity price that results from an auction is just unreasonable under two Oh six. But that it doesn't have to do the ex ante to a five review of that or. Or what is the, what is the commission's position? With respect to. What is. I know.  The price. Includes tariffs, but does it only include tariffs or. What the commission monitors the filings for it, as it says in paragraph 18 is a rehearing order. Which we were just discussing it. It monitors the reporting for evidence of market power. So it's not looking at whether individual transactions are themselves just unreasonable. It's looking for whether there are patterns. Or indicia of exercises of market power in that reporting. The court in lock here at 10, 13. Describes. It as reporting requirements for the administration of Tara. And. Right. Right. In your brief at 29 at 33 at 45 to 46. You refer to the auction price as a rate. And I'm just trying to, so that's looking at that. Rate as potentially. And I'm just trying to figure out. Is that going to be. Relevant to whether. There's been a failure. Under the tariff to guard against an exercise of market power. Well, it's looking at. The price is being charged the rate, if you will, to see whether there is evidence of an exercise of market power. Exactly. But not to looking at each individual transaction to see if it itself in some. You know, cost-based rate filing kind of way is just a reasonable rate. On the other hand, it could be key evidence. So it could on its own actually raise a question, but I, I think I understand your position that it is. It's not the object of the 206 inquiry, but it there, it could bear on it. And often I'm assume often does. Yes. I'm sorry. I still have to ask one more question. That's on my line. Given the paragraph 18 talks only about the fact that reports were filed. Is there any evidence in this record that the ex post review? By the commission. Of the quarterly report. Happened and that the commission. Not the chair, the commission concluded. So that nothing in those reports. Trigger. Concerns about the terror. Okay. There is no discussion in the orders of the commission's review of the quarterly reports. There was the investigation, but there's no independent discussion. Quarterly. What, what they reviewed in the quarterly. How would they review? Did they come to a, to the commission? Come to the expo. Conclusion. I'm sorry, your honor. I didn't understand. The ex post requirements that we look at the, we look at the reports. And. That's sort of our double check. That nothing went haywire with the Tara. Is there any evidence in the record that the commission came to that conclusion? The point again, your honor is. The, the, the, the, the, the, the, the, the, the, the, the, the, the, the arguments is the burden of proof. It wasn't the commission's affirmative duty. This is a 2 0 6. Duty was. To do this expo. Absolutely. Your honor, but not. Now where it happened because. Well, but the. Your honor is. About it. Not having happened here. The ex post review runner is independent. This 2 0 6 complaint proceeding. It's like the investigation. I'm just asking you. Commission has its own burden here. It's the one that chose to rely on the tariff and it has its own burden. And then on the second prong, the explosive view it said reports are filed. That's what that's kind of. Dark. That's all it said. And then commissioner says, yeah. The commission. Didn't make a decision. That's what I'm trying to ask. Is there something where you think the commission was responding to that point? Well, there's nothing specifically about the review of the quarterly reports and the orders. Okay. All right. Okay. We'll hear from the interview. Mr. Thank you, judge. Please the courts. There are issues here that are larger systemic issues. I think are important issues. There's also. Very fact specific issues about this record. I'd like to start with the larger issues, which is court. Several of you have asked about in the last few minutes. I'd like to start with first duty. To monitor as judge Millette was discussing. I think there's a real danger here of pushing that to the point where we get to. The incorrect position. The public citizen is arguing that every time there's an option. The commission has a tool five duty. To make a just and reasonable determination before those prices are allowed to go into effect. I think that's false. I think that it's absent. This court has held in interstate among other cases. That it is enough that there's an X. Anti determination. Of lack of market power or mitigated market power. And there are exposed reporting. It's done. With your backup being the potential for two Oh six. Filings. Now the two Oh six filings can be either by the commission. Or they can be by private parties. But because these reports are public reports. They serve the function of showing shedding daylight, frankly. Into the process to allow two Oh six filings. There was no claim in this case. That's really not before the court. That's why I think judge might, you probably found some of the answers unsatisfying, but there was no claim in this case. But FERC failed this general monitoring duty. So there isn't any evidence in any writing about it. There wasn't anything in the rehearing petition about it. The argument that was made in the rehearing petition was. Has a duty under two Oh five. The reviewed all rates before they go into effect, or at least review the tariffs before the rates. I'm not sure. My concern is that the commission itself begs the question. When my, my concern is that the commission begs the question raises it and begs the question when it says. We're relying. To reject this argument about the 2015 15 arguments. On. The terror. And compliance with the terror. And we all know that requires two determinations. One. The approval of a tariff.  The approval of a tariff and advance in those terms, which happens here. No one can test that. And it requires. After the fact. We do not just the filing. Of reports. After the fact. Determination is active, ongoing reviews. I'm going to have to look and say. I'm not saying they have to do anything formalized here, but we have to know somehow that the commission. The commission. Payed attention to the reports and nothing. Nothing to see here. Yeah. But the problem. No, the problem we have here is all the commission said is. And those reports were filed. And public citizen doesn't dispute that they were filed. And then we have this. Sort of dust up with. Commissioner Glick about, you know, the commission didn't come to a conclusion. I'm not saying that the commission didn't come to a conclusion. I'm just trying to understand. How that works. It was a commission that chose to rely on the tariff. I'm not, I'm not saying anything here about prices or anything like that. I'm talking, I'm looking at the commission. So your honor. I think I'm trying to at least respond to that question. I understand the question. First of all, I understand that the tariff was sufficient at the time of the auction. The commission didn't have the. Ability. At that point, after the fact to initiate a two Oh five proceeding into the tariff. Now there is a question that's raised by public citizen. As to whether the tariff. That's a two Oh six question. Whether the tariff was sufficient at the time of the auction. And I agree. That the commission had to respond to that. In terms of the monitoring. This is the general requirement for the approval. And for the lawfulness, frankly. Market price, market-based pricing tariffs. Is that there's an X anti-finding. And there are reports that are filed that allow. Both the commission and the public. To review them. There is no second determination. There's not another. Section. Of the act. That that's neither 205 nor 206. That the commission has to make an affirmative finding on the record. But on its monitoring, there can be a claim perhaps. If someone wants to raise it. Commission this tariff is no longer. It's self-just and reasonable. Because you aren't doing any monitoring. But that claim wasn't made in this case. You can search the record. There is no claim in this case of that sort. It's why you don't see any discussion of that. The only argument that was made is commission you at a 205 duty. To take a completely fresh approach, putting the burden on the proponent. Before you allow the prices. Going to affect you at a 205 duty. And a 206. And I agree with that. And I'll get to that. I think your 206 is actually the tricky part of this case. I think there's other. These other issues are quite important systemically. And I think it's important to get them right. I think that. You know, when we get to market manipulation, it's another, I think, important systemic point here. The only argument, first of all, that was made on rehearing. And I invite the court to take another look at the rehearing petition, if necessary. The only argument that was made by public citizen there. Is that, is that. The commission had a duty to explain for purposes of its investigative. Or enforcement proceeding. Why it didn't find market manipulation. All of the references that it's making now in its brief. Two. Oh, this is just two or six. It's part of our proof that it was unjust and unreasonable. Is not in the argument section at all of the rehearing petition. But if you get to that. I totally agree again with the commission. That certainly. Market manipulation. As well as market power can be a cause of unjust and unreasonable rates. I don't think that. Before you go any further. Mr. Hold on. I just, I just want to capture what you just said. If you don't mind for a minute. Oh, it was very helpful. So your point is that. That a complainant under two Oh six. Into a sick complaint. Can argue. That market manipulation produced unjust and unreasonable rates. That they can do that. But. Is that correct? Absolutely. Your honor. Okay. And second. That. Public citizen. Didn't argue that in his petition for rehearing. Is that your point? Yes. It's for the hearing was focused on the failure to continue and to have an enforcement proceeding. Which would have been a two 20. Okay. That was my point. Okay. Oh, okay. So, so. In answer to. So the answer to, I read this sentence from. From from commissioner. Where he says. The fact that they followed the relevant language doesn't respond. To an allegation that the resulting rates for unjust and unreasonable because of market manipulation. You agree with that? No, actually I don't, but for a different reason, your honor. I thought you did agree with that. No. If I can explain. Yeah. The reason is that there were no unjust and unreasonable rates. In other words, in theory, certainly. Market manipulation or market power could lead. Two unjust unreasonable rates. The commission, the bottom line of two or six is where the rates unjust and unreasonable. The commission found that there was no proof here or no determination. That the rates themselves were unjust unreasonable in some sense.   unreasonable in some sense. That means that there. Any question about market manipulation becomes somewhat irrelevant because the bottom line. Here is. The rates themselves. What was produced in the end. Are you talking about the auction? Are you saying. Are you saying that because. I'm sorry to interrupt. Are you saying that because the rates. The rates themselves were produced by the. Tariff that had been approved. They are immune from a claim. That they, even though they're sub, even though they complied with the tariff, they were produced. By an auction that comply with the tariff. That even though they did. That there. That. Because they did. They're immune from a claim. That they nonetheless resulted from market manipulation. Okay. What I'm saying to be very precise. Yeah. And I want to be precise with you is. That if you have a tariff. That. Has mitigation measures in it. That are sufficient to ensure. That the clearing price that's produced in the auction. Is comparable to the price that would be produced in a workably competitive markets. Right. Then yes. The answer is that the tariff itself is just and reasonable. And. The prices. That result from that. May go up and down with the market. But they're not individually. Challengable. Why didn't the commission respond that way? Why did the, why was the commission's response? To the public citizens complain about mark market manipulation, that they hadn't met their burden of proof. As I understand your point, it wouldn't, they can't, there is no burden of proof for them to satisfy because. These were by definition, Justin, reasonable rates. Right. Your honor to two things on that. Number one. The commission, of course, gives two responses. One's in paragraph 13. Where it. Discusses it's two 22 proceeding. And I think we're past that here, at least in this argument. General agreement on that. Right. In paragraph 14. And what they said specifically is public citizen has not met its burden as a complainant to demonstrate that activity. Meeting that definition occurred and resulted in rates. That are unjust and unreasonable. And the end of there is important. Your honor. Because if it doesn't result in rates that are unjust. And unreasonable. Then. Whether it's market. Potential market power. Whether it's manipulative conduct. And after all manipulation is a conduct. One engages in. Is not the two Oh six ultimate question. And I'd like to get even more specific for you. Here. Let me just ask you. So is. So it's good. It's wrong that just because something is legal, doesn't mean. It doesn't mean it isn't market manipulation. I'm not sure I got that your honor, but, but let me try to rephrase it. To the extent that. Commissioner Glick is saying that you can have market manipulation. That is punishable by the commission. Even if prices are just unreasonable. I think that's correct. I think it's a conduct. That the commission can punish. Even if, you know, again, using its enforcement power. Even if the price is just unreasonable. On the other end, if the price is just unreasonable. If the end result of the auction. Is just unreasonable. Then whether market manipulation occurred or not is not at that point. The two Oh six issue. And the reason what ties this together here. And again, this gets me a bit into the fact specific part of this case. Which I agree is tricky. Is that you've got a reference level and a conduct threshold here. What they are is an attempt to isolate and determine what the opportunity cost is. I'm sorry to interrupt you, but I, I still, I want to make sure I understand this. And then I have no further questions. If. As what I heard you say is that even if. Even if there is proven morning. Market manipulation. That is subject to fines under two, two, two. It's occurred. And the commission. Finds it. Imposes fines. That. That. Even though that might happen in a case. It's irrelevant that it might also have produced unjust and unreasonable rates. No, no. The opposite your honor. The opposite. What I'm saying is that. It's not. Someone can engage in conduct. That is bad conduct. Let's assume even they tried to do all sorts of terrible things. But in the end, for whatever reason. The auction produced Justin reasonable rates. Maybe that person. Their conduct was terrible. But it didn't affect the auction. That would be my, you know, the easiest example to cite. In that case, you would have market manipulation. But not an unjust and unreasonable rate. But Mr. I'm having trouble imagining that. Like, isn't it? Also the case that a clearing price. Could be below the conduct threshold. But nonetheless. Reflect an exercise of market power or reflect market manipulation. So the question is what is the cross check on what, how do we know? In a case that you're hypothesizing in which there is market manipulation. That, oh, we're not worried because the price. We're not worried under 206. We might be worried under 222, but we're not worried. Into a six. Because the price is just unreasonable. So I'm glad you asked that question, judge. I the reason is this. I guess I take exception to your, the assumption in the beginning of the question. I think the answer is that if the conduct threshold is working. Properly. And that's a question. Again, there are arguments in this case that. The commission should have found. Based on the 2015 findings, the commission should have found that the conduct threshold wasn't sufficient to do its job. I understand those arguments and we can address them. We wish, but assuming for right now that the conduct threshold. Was. Adequately constructed. To reflect the opportunity cost of the sales. If that's true. If that's true, then the commission. Initial. Approval of this mitigation measure holds still. Which is that if the price you bid in is less than your opportunity cost. Then your price is not a super competitive bid price. It is competitive. And if the bid price is competitive. Then the market is going to produce. Prices. Clearing prices. That are within the range of Justin reasonable because there were a workably competitive market. Would produce prices. So unless there's a problem. With how the conduct threshold is designed. Or the reference. Level is designed. You can't challenge what comes up. Comes out of it. Unless you're able to challenge the commissions. Theoretical, but, but accurate. Economically conclusion. That. Opportunity cost is a real cost and that price is under opportunity costs are competitive. That's not an argument that was even made in this case. All of a sudden, as it has never. Taking issue with that construct. I'm sorry. I was just going to say all that they've said is that it wasn't. Correctly set that the provisions for how to set it using PJM essentially as a proxy. For opportunity costs didn't work. Right. But they've never argued. That if you had a. Mitigation measure based on opportunity costs. And you were below that opportunity cost. It could nonetheless be unjust and unreasonable. I mean, we shouldn't put that off the table. It very much could be. Right. I think economists might argue about it. Judge pillared. But the commission is so far within its deference. To come to the conclusion, which it came to, of course, when it approved these. Mitigation measures. That it priced below. Opportunity cost is going to be just and reasonable. That is absolutely not something this court could overturn. Yeah. So just in common sense terms. Same question that I had for prior counsel. To me, it's one thing where. The whole market. Is. You know, all the zones are like, there's a capacity problem. Right. And everybody's pushed up to. And, you know, there's a capacity problem where there's no need for price signals. Up to the higher price. As opposed to the near zero lower prices that obtain when there's plenty of capacity. And, you know, when the, the, the reason these sort of. Anomalous seeming to the average econ student. Curve that's steeply downward sloping or vertical. Actually makes sense. It's because this is a capacity. Market. And if there's plenty of capacity. No need for price signals where there is enough capacity. Boom. Immediate need for price signal. What is odd to me here is that. It doesn't seem like anybody's saying that there, there was an accurate price signal in. What dynamics. Ended up. Getting or the price that was set in the auction at issue here. Your honor. I think there's two answers. If I can, for this, The first is that if it were true. And again, I understand the arguments back and forth, but if it were true. That outside of this market, the price for capacity. Let's say in PJM. Was $150. Or 160 or $170. And it's absolutely true that for Dynegy to bid it into the auction, as opposed to selling it. They didn't the auction at 150, as opposed to selling it outside of.   The price for capacity. My, so as a whole. Would not be a. An unjust and unreasonable bid. And would not be an unjust and reasonable price because. The prices in PJM would be relevant. To understanding that now in terms of why this zone is different. Again, it's not something that the briefs go into because the question really isn't. It's not something that the briefs go into because the question really isn't. Isn't put on a tee. But it's different for a number of reasons. I mean, one of them is that several of the other zones. In fact, I think all but one, all but seven. Zone seven. Our zones where you have integrated. Operators who are both generating power, serving load, et cetera. They've got no. Incentive to bid a non-zero price in the auction. They're on both sides of the auction. They've got it. Serve load in the end. This is one of just two competitive zones. In the Miso system. And it's the most competitive zone inside my system. Here. You do have an incentive. Particularly if you're a generator. Like dynagy to be at the end. At least up to your going forward costs. And that's what they did. The commission pointed to evidence. And again, the commission pointed to evidence. I'm not saying the commission made a finding on it. But the commission pointed to evidence. That dynergy bid below it's going forward costs. And by the way, in common sense terms. Going forward cost means the. What the cost would be to shut down. And the theory here is that if your bid is less than the costs that you would incur. Basically to shut down and your bid for capacity is going to be a competitive. So, you know, that's the answer to the question. I think it goes a bit deeper than. Then again, I'm the other parties have gone here. And so the commission didn't make a finding on it. Okay. Mr. What you said so far about market manipulations is actually quite helpful, but I just have one. I know I said, I only didn't have any more questions, but I do have one. Take this case, for example. So. In this situation where the auction produced. The auction by definition produced. Just in reasonable rates. Correct. In this case. But the commission nonetheless. Undertook its own investigation of market manipulation. Right. It did. Okay. What. What kind of evidence. Could the commission have uncovered. Which would suggest. That there was market manipulation. Even though. The. Auction was completely. What was. Even though the auction procedures were compliant. What would it look like? What would that be? So your honor. I'll address this. And again, two parts of, I can't. The only one that really gets any. Any real play in the public citizen complaint is economic withholding, which I do think is dealt with already. And the commission. In paragraph 85. By the conduct threshold. Now your honor mentioned a couple of other things that public citizen brought up. It brought us, for example, the initial. The acquisition that occurred in 2012. Right now. The commission approved that acquisition under section two or three authority. And public citizens didn't seek rehearing. So that one's kind of old and stale, honestly. And beyond. At least a current challenge for market manipulation. The second issue that I think you're on a raise. Is how. The commission. How the commission. Myself makes decisions. In other words, how the stakeholders within my fit myself. Contribute to making decisions. That issue actually was litigated in the 2015 order. And the commission responds to it and says, I'm not buying it. We think that the decision-making apparatus. Functions. Satisfactorily. And again, there was no challenge to that by public citizen. I don't see a market manipulation theory. The public citizen has advanced here. That isn't already taken care of by all of that. Now, if your question. If your question. Okay. Suppose just, just for hypothetical purposes. If. If, if the commission had concluded. In its market manipulation analysis. That there had been lots of manipulation. The remedy would have been fine. Correct. It wouldn't have affected. It wouldn't have affected.  It wouldn't have affected. Discouragement your honor. There's various remedies. Oh, it could, it could be discouragement. It could be, but it wouldn't, it wouldn't go back and reconsider the. Fairness or justice of the rate. Right. Not if it believed. That the tariff was. Right. I'm set. We're satisfactory to mitigate the exercise of power in a way that would create a super competitive prices. Okay. Thank you. Thank you very much. I understand. So Mr. Brass, the first. Argument you dealt with when you said you're going to respond to judge Tatel's question in two parts, you said. That public citizen says there was economic withholding. And you said that was dealt with by the conduct threshold. And I I'd love one of your crystal clear common sense explanations of that, because to my mind. That's sort of apples and oranges that in fact, given the steep or vertical curve. That precisely one way that a. Provider with market power could make sure that the price is on the high. Side of the curve rather than the zero side is through. Economic. Withholding. Withholding. So your honor, the, the type of withholding that's an issue here and that's been discussed in this case is called economic withholding. And what it means is that. You bid your resources in. At a super high price. Let's say you've got, let me give you an example. You've got 10 resources, 10 facilities. You might be able to bid from.  you might be able to bid from one of the four facilities that are listed here. And for six of them, you bid them in. Ungodly high prices, effectively taking them out of consideration for the auction. Leaving only four facilities left to bid in at other prices. And by doing that, rendering the highest of those four perhaps as the clearing price, the auction. And so one of the questions here was that the commission looked at is well, were any of the prices that were bid by Dynegy. Super high, if you will, in that way. And how they analyzed whether they were too high was by looking at the opportunity cost. Of what could they, if they didn't bid it into this auction, what could they have sold it for? To PJM. And because the bids were lower. Then what they could have sold it to in PJM. They concluded that these bids were not economic withholding. They could have just sold elsewhere and it wouldn't have been available for the auction anyhow. But they sold to this auction at a lower price than they could have sold to PJM. Therefore their bidding prices were perfectly competitive. That that's what the. That's what the commission deals with that. Paragraph 85. Of the, of the initial order. And the PJM prices have not themselves been challenged. No, no. And the PJM prices, your honor were. You know, in or around one 50, some of them were higher than that. And again, you know, a lot of this is discussed even in the 2015 order. From the court. So that's, again, there is a question and it's been. You know, public citizens argued it. And the commission has responded to it already in this argument. About, okay. But did the commission do a good enough job? Answering public citizens argument. That the conduct threshold or reference level. Was not sufficient. It was not set at the right place. Given what the commission had found in 2015. I don't know that I have a lot that I can add to this court's consideration on that. It's absolutely true. That the commission's 2015 order. That the commission's 2015 order. Gave two reasons why the reference level. I sort of combined. I'd say why the reference level was insufficient. And those two reasons were basically transmission. Constraints on the one hand, which existed at the time of the auction and future changes to the PJM capacity construct. Which hadn't gone into effect yet. And I agree completely that, that leaves the question and left. The question. Well, okay. But does the first of those reasons was that sufficient in and of itself? To render. The conduct threshold. Insufficient or unjust and unreasonable as the case may be. The question, I think the harder question in this case is. Did public citizen do enough to put. The commission on full notice. I agree that a generous reading. Of public citizens. Rehearing petition. You can, you can get there. But they certainly didn't raise it specifically. And if you look at that petition, they don't say. There were two reasons why in 2015, the commission found. The conduct threshold insufficient. They don't, they don't point that out. They don't say what's left. Is the question of transmission constraints. What they essentially say is look. In 2015, you found it to be. Insufficient or. Unjust and unreasonable. You have to explain. Why it's just unreasonable as of the time of the auction. The commission gave an answer that I will agree is general and high level. And I think the real question is, is this a Sal's. Sal's ear answer to a Sal's ear. Argument. Or is. You know, public citizens argument. Fairly. Fairly apprised. I think that's a closer question, but that's sort of the best I can do to explain how we view it. What about Mr. The commission's own assessment. Implicit. In its decision, not to simply dismiss in 2015. On the ground. That public citizen had made a Sal's ear. Argument. And. To me, the very fact that they said, we're only running apart. This is super serious. We have to further look into it. And then only. 19. Said actually, oh, you never met your burden. In the first place. There's something about that. That does not sit well. Your honor. I don't think the commission. I. I'm not saying that the argument was a Sal's year argument in 2015. And I want to be very precise about that. I think the commission did leave open a question. In its 2019 order. That it had said earlier, it was going to address. And that's effectively whether the transmission constraints. Alone would have been enough. To render the. The conduct threshold. I agree with that. I don't. Think. That public citizens rehearing petition. Did a particularly good job of focusing on that issue. And explaining what it was, what evidence there had been before FERC and what FERC had to do to address. You may end up taking FERC to task for not. You know, reading the specificity into it and answering the question. And I understand that. But certainly public citizen could have raised it in a way that was clear enough. That it couldn't have been missed. And I think that's their duty under three 13. Which is, you know, is a particularly demanding exhaustion requirement. They have to have made. As this court said in a Sarko, the very argument. That they raised on appeal. And I don't think. With all due respect to public citizen. I don't think that they made the very argument. I don't think that they made the very argument. That you see in your appellate. There was no reference in there. We hearing petition to the transmission constraints that the commission had already found substantially limited the amount of capacity that could be exported. To to PJ. But I understand that's a closer call your honor. And again, I don't think I've got. Any more I can do on that too.  I don't think I've got any more questions. To help the court. All right. I'm sorry. Did you have a question? Yeah. I'm sorry. Go ahead. Transmission constraints. The commission you agree acknowledged existed. At the time of the 2015 16. Auction. So these. Transmission. This whole premise that you would. You'd have the opportunity to sell this. Energy to PJ M rather than. Here. You don't disagree that those transmission constraints were. Important factors. Calculating both the conduct threshold and the. Sorry. The reference level, your honor. Reference level. IRL. Initial reference level. That they were. Important factors in calculating those two numbers. I think I'd phrase it differently, your honor. I think we may be seeing this the same way. I think the question I think you've asked is. Do the commission do. Do transmission constraints into PJM. Affect. The. The reasonableness of relying on sales into PJM. And the answer is they might. Commission didn't actually. The commission came to no conclusion about that. Right in 2015. They said there are substantial limitations. But they didn't conclude. Whether those limitations at the time of the auction. Themselves would have been enough. To render. Right. This mechanism. Opportunity costs. The ability to sell and to PJM versus. And how constrained was it, I guess, is the question, your honor. That's that's the question. Yes, it was limited. Was it limited enough? To affect. Whether PJM was an adequate proxy. For opportunity. Cost is, I guess, how I phrase it. I mean, they found that in the fact that sales just weren't even happening. No, they found. Very low level. They were happening at a low enough at a low level, your honor. And the question is, is that enough? And the commission. And obviously didn't address that in 2015. All right. Thanks. Certainly. Okay. That a, that FERC. Needs to explain in response to section two or six, why. Market power. Insertion market power market manipulation did not occur. Just as a legal matter. The commission has a duty under two or six. In response to a complaint to explain its conclusion that there was none. No, your honor. I think if the commission is able to conclude that the rate was just unreasonable. It doesn't have to give any. Answer to was their conduct. In the market that was, that would count as. Market manipulation. That becomes irrelevant. If the rate was just unreasonable. But it does need to explain why the rate was just unreasonable. It has to explain why there was a failure of proof. On the two or six. Right. It was unjust and unreasonable. All right. Okay, Mr. Thank you. Thank you. Mr. Nelson, you were out of time, but you can have two minutes. Thank you, your honor. I want to just say at the outset. That if the commission had in fact made findings that. That the sales prices were reasonable in light of the opportunity costs of. Selling it to PJM in paragraph 85 of its initial decision. This would be a very different case, but that isn't what it said. All it said was. It didn't say that. The tariff includes these provisions. They're designed to do this. It was complied with. It didn't say that, that those provisions were actually adequate to do what they were intended to do at the time. And for that reason, you know, I think that. Saying that we should have focused more on. A particular distinction in the, in the. We hearing requests seems excessive because the commission. Explained absolutely nothing. About its reasons for concluding that. That these prices were just and reasonable. Other than that, the tariff provisions had been complied with. And these were tariff provisions that it itself had held. Prospectively unjust and unreasonable. In 2015 for reasons. That in the main were applicable to the 2015 option. And it's not only the, the reference level that is, that is critical here. It's also the initial clearing. The local clearing requirement. Because that is the feature that made. The, the. The, the, the, the, the, the, the, the, the, the. Dinergy a pivotal supplier. That's why. The energy is bid was sufficient to set the clearing price and had a happy. The, the. The. Zones and local clear. The, the, the. The auction requirement in effect, not been gerrymandered at the outside. You know, then it wouldn't have mattered whether, whether the bid was within the reference level because the option never would've cleared anywhere near that price. So it's, it's not only. One feature of the auction design. That the, that the commission needed to explain. Needed to explain both features that it had held unreasonable before. And it didn't explain either one. Either the initial order or the. Mr. Nelson. Can you explain. Exactly what relief you're seeking. Under which of your claims. The initial relief would be for, for the commission to explain. In a reasoned way. Whether, whether. We have stated a claim. That these rates were unjust and unreasonable. So. When you say rates. Yes. Whether the tariff at the time of the. Auction was unjust and unreasonable. As evidenced by. The commission's view. Is that. Unjust and unreasonable auction prices. Well, you know, our ultimate position is that the prices are rates. But even under the, under the. Commission's view and. This trends. The, the auction has to have been conducted under. Procedures and circumstances in which. Participants could not exercise market power. To produce a rate that would not have obtained in a competitive market. And. You know, that's the initial question. The commission has to explain. Is. The commission has to explain. Why it concludes or whether it can conclude. That, that the result was just unreasonable. You know, ultimately. What we've maintained throughout is that. You know, this can't be decided without a hearing and, and discovery. But, you know, as an initial matter, the commission just has to make a, a reason to explanation. Which so far. It hasn't provided for the disposition. Complaints, which goes to both manipulation and justice. Right. Okay. Ms. Perry. Mr. Mr. Nelson. Thank you for your arguments. The case is submitted.
judges: Tatel, Millett, Pillard